# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00832-COA

ASHLEY DARVILLE, INDIVIDUALLY, AND ON BEHALF OF THE ESTATE OF CAROL DARVILLE     APPELLANT

v.

HECTOR MEJIA     APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/09/2014 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DANIEL ELLIS MORRIS |
| | LINDSEY J. SCOTT |
| ATTORNEYS FOR APPELLEE: | WALKER REECE GIBSON |
| | BRADLEY SMITH KELLY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | GRANTED APPELLEE'S MOTION TO DISMISS WITH PREJUDICE |
| DISPOSITION: | REVERSED AND REMANDED - 01/05/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND JAMES, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. On August 8, 2009, while traveling northbound on Interstate 55 in Holmes County, Mississippi, Hector Mejia's vehicle swerved into the left lane, and then overcorrected, swerving back into the right lane, and colliding with the vehicle driven by Ashley Darville. Her mother, Carol Darville, owned the vehicle and was a passenger in the car. Both women

sustained multiple injuries.[1]

¶2.    On April 26, 2012, Darville filed a complaint for negligence against Mejia with the Holmes County Circuit Court.  After four attempts to serve notice on Mejia were unsuccessful, Darville moved for an extension of time for service of process on September 14, 2012. *See* M.R.C.P. 4(h).  While nothing in the record indicates the circuit court granted the motion, the circuit court did grant a second motion for an extension on January 2, 2013, allowing Darville an additional 120 days to serve the defendant.  The second motion stated a belief that Mejia was evading service of process and noted efforts by Darville to subpoena Mejia's license number and driving records from Tennessee and Mississippi to determine his whereabouts.  An investigation revealed that Mejia had approximately eighteen residences, the majority of which were in Tennessee, between 2008 and 2013.

¶3.    However, even after these inquiries, Darville was unable to locate and serve process on Mejia.  A third motion for an extension of time was filed on July 2, 2013.  The record reflects that the circuit court entered an order denying the third motion on June 27, 2013.  A fourth motion for an extension was filed on December 11, 2013, explaining the multiple efforts to serve Mejia, who was believed to be "an illegal alien and/or a drifter."  On February 10, 2014, Darville attempted service of process on Mejia through his insurance company, United Automobile Insurance Company (UAIC).

¶4.    Eventually, since Mejia was considered a nonresident motorist, Darville submitted

---

[1] Carol Darville's subsequent death was not related to the automobile accident.

service of process to the Mississippi Secretary of State's Office on February 25, 2014, pursuant to Mississippi Code Annotated section 13-3-63 (Rev. 2012). Service of process on an out-of-state defendant under section 13-3-63 may be effected by serving Mississippi's Secretary of State, who must forward the summons/process to the defendant at his last known address via certified or registered mail. A defendant's return receipt or evidence of the defendant's refusal to accept delivery must be filed with the court in which the action is pending. Miss. Code Ann. § 13-3-63. The Secretary of State attempted to forward the summons to Mejia, but it was returned unclaimed.

¶5. On March 7, 2014, a motion to dismiss with prejudice was filed by attorney Bradley Kelly with Copeland, Cook, Taylor & Bush (Copeland), purportedly on Mejia's behalf, although it was acknowledged that Copeland represented UAIC, Mejia's insurer. The motion alleged Mejia was improperly served through UAIC, who was not his registered agent. It alternatively claimed that even if service of process was proper, the statute of limitations had expired prior to perfection of service.

¶6. A hearing on the motion to dismiss was held on April 28, 2014. Kelly asserted that he represented Mejia in the lawsuit and argued that service of process was insufficient and that Darville's claim was barred by the applicable statute of limitations. Darville admitted service of process on UAIC as Mejia's agent was not proper, but argued "the only attorney that [Mejia] has is the Secretary of State" and "[c]ounsel ha[d] no standing" to file the motion on Mejia's behalf.

3

¶7. On May 15, 2014, the circuit court granted the motion and dismissed Darville's complaint *with* prejudice, concluding that "the statute of limitations ran before service of process was perfected either by service upon Mejia's insurance company, which [the court found] to be unprecedented and unsupported by law, or upon the Secretary of State." The order did not address the standing issue asserted by Darville.

¶8. On appeal, we conclude that Darville exhibited good cause for not timely serving process on Mejia, and there was insufficient information to determine that the applicable statute of limitations had run. We reverse the circuit court's dismissal *with* prejudice on this ground and remand for further proceedings in accordance with this opinion.

## STANDARD OF REVIEW

¶9. A circuit court's grant or denial of a motion to dismiss is reviewed de novo. *Shaver v. Blackwell*, 43 So. 3d 1155, 1157 (¶6) (Miss. Ct. App. 2010) (citing *City of Jackson v. Perry,* 764 So. 2d 373, 375 (¶9) (Miss. 2000)).

## DISCUSSION

I.    **Whether counsel had standing to bring the motion to dismiss on Mejia's behalf**.

¶10. Darville contends the circuit court erred in granting the motion to dismiss, "as the motion was not brought by Appellee, but by his insurance company, UAIC, who lacked standing to bring the motion." The Appellee responds that the motion "was clearly brought by counsel on behalf of Hector Mejia, not [UAIC]." At the hearing on the motion to dismiss,

4

Kelly stated that he was there "on behalf of the Defendant," making a "special appearance."[2] He noted that another member of his law firm was the registered agent for UAIC. However, Darville's counsel argued:

> And we really shouldn't be arguing this motion anyway, because [c]ounsel has no standing and the motion itself[] is moot, because he has no standing, because he has no relationship with Mr. Mejia, he hasn't been hired by Mr. Mejia, he hasn't been contracted by Mr. Mejia. The only person counsel represents is the insurance company.

¶11. We find Darville's claim is not wholly supported by the circumstances. Kelly, who was evidently appointed by UAIC to assist in the litigation brought against Mejia, claimed he represented Mejia, not UAIC. There is no dispute that UAIC was not a party to the proceeding or an agent for the defendant. Although the insurance contract is not contained in the record, Kelly asserted at the hearing that Mejia was "afforded representation under his insurance policy." "In Mississippi, an insurance company's duty to defend its insureds derives . . . from the provisions of its policy, that is, its insurance contract with its insured. It is a matter of contractual agreement." *Baker Donelson Bearman & Caldwell P.C. v. Muirhead*, 920 So. 2d 440, 450 (¶40) (Miss. 2006); *see also Minn. Life Ins. Co. v. Columbia Cas. Co.*, 164 So. 3d 954, 970 (¶57) (Miss. 2014) ("Under Mississippi law, the determination

---

[2] We do not agree with Darville's claim that Kelly made a general appearance, thus waiving service of process. The only argument brought at the hearing was to contest jurisdiction for failure to serve process upon the defendant. *See Isom v. Jernigan,* 840 So. 2d 104, 107 (¶9) (Miss. 2003) ("Mississippi does not recognize 'special appearances' except where a party appears solely to object to the court's jurisdiction over her person on grounds that she is not amenable to process.").

of whether an insurance company has a duty to defend depends upon the language of the policy as compared to the allegations of the complaint in the underlying action.").

¶12. Furthermore, "[a]n insurance company's duty to defend its insured is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the policy." *Baker Donelson*, 920 So. 2d at 451 (¶41). Darville acknowledged UAIC's duty to defend by attempting to serve Mejia through the insurance company. After UAIC was notified of the complaint through Darville's attempt to serve process, it filed a motion to dismiss on Mejia's behalf, presumably under its duty to defend. Thus, we cannot conclusively state that counsel had no standing to file a motion on Mejia's behalf.

**II.      Whether the circuit court's denial of Darville's third motion for an extension for service of process was an abuse of discretion.**

¶13. Darville claims her third motion to extend time for service of process should have been granted by the circuit court, as there was "good cause" shown for not being able to serve Mejia. Mississippi Rule of Civil Procedure Rule 4(h) states:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.[3]

---

[3] Federal Rule 4(m) states there is no limit to the number of extensions as long as a legitimate reason exists to grant the extension and it results in no prejudice to the defendant. 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137 (4th

6

Once a party has been granted an initial extension of time under Rule 4(h) in which to serve process, "a second or subsequent extension of time to effectuate service of process may be granted by the trial court only upon a showing of 'good cause.' In other words, once the initial, 120-day period after filing the complaint has elapsed, good cause is required to avoid dismissal." *Johnson v. Thomas ex rel. Polatsidis*, 982 So. 2d 405, 413 (¶24) (Miss. 2008). This Court has noted:

> To establish good cause, the plaintiff must demonstrate that she made diligent efforts to effect service upon the defendant. *Foss v. Williams,* 993 So. 2d 378, 379 (¶6) (Miss. 2008). Examples of good cause include: "when the failure is a result of the conduct of a third person; *when the defendant has evaded service of process or engaged in misleading conduct*; when the plaintiff has acted diligently; when there are understandable mitigating circumstances; or when the plaintiff is proceeding pro se or in forma pauperis." *Id.*

*Shaver*, 43 So. 3d at 1157-58 (¶8) (emphasis added). Determining whether good cause exists is "a discretionary ruling on the part of the trial court and entitled to deferential review of whether the trial court abused its discretion and whether there was substantial evidence supporting the determination." *Rains v. Gardner*, 731 So. 2d 1192, 1197 (¶18) (Miss. 1999).

¶14.    According to the record, Mejia had multiple listed addresses. The steps utilized to serve process on Mejia are as follows:

- A summons was issued to a listed Memphis address on May 1, 2012, by a process server. The return receipt indicates "bad address"/unable to serve.

- Second summonses were issued August 6, 2012, via certified mail to

---

ed. 2015).

7

several addresses.

- A motion to extend time for service of process was filed on September 14, 2012. No order or action was taken on this motion.

- A second motion to extend time was filed on January 2, 2013, outlining four attempts to serve process, and alleging Mejia was evading process. The court granted an additional 120 days for service of process on January 3, 2013.

- Darville issued subpoenas duces tecum to Tennessee and Mississippi to obtain Mejia's driving records/car license and registration, but was unsuccessful in locating Mejia. A search revealed that Mejia's Social Security number was linked to multiple people.

- Darville filed a third motion for an extension on June 24, 2013, noting extensive efforts to locate the defendant, "but to no avail." The motion was denied for lack of sufficient evidence for good cause.

Despite these attempts, Darville was unable to serve process on Mejia, and she presumes that Mejia is likely an illegal alien and/or a transient.

¶15. In *Jenkins v. Oswald*, 3 So. 3d 746 (Miss. 2009), Margaret Oswald was unable to locate the defendant, William Jenkins, through a series of internet searches for the defendant's driver's license records and addresses. Jenkins was finally served process almost five years after the initial filing of the complaint, and he subsequently filed a motion to dismiss for the failure to comply with Rule 4(h). *Id*. at 747 (¶¶2-3). Although the trial court noted that "the absence of application for an extension of time to search for Jenkins [was] problematic," it did not find the delay to be "a fatal flaw" as "Oswald was making some diligence, or at least reasonably diligent efforts" to locate Jenkins, and it denied the motion to quash service of process and dismiss the action. *Id*. at 749 (¶11). The supreme court

8

affirmed the trial court's ruling, finding it supported by "substantial evidence." *Id*. at 750 (¶16).

¶16. We acknowledge that Darville filed the third motion to extend time for service of process on June 24, 2013, outside the 120 days granted by the circuit court on January 3, 2013. When a plaintiff has difficulty in effecting service of process upon a defendant, "it [is] incumbent upon him to petition the court for an extension of time prior to, rather than after, the expiration of the 120-day period." *Sanders v. Robertson,* 954 So. 2d 493, 496 (¶13) (Miss. Ct. App. 2007). However, as noted in *Jenkins*, this failure is not fatal to the action. In *Webster v. Webster*, 834 So. 2d 26, 29 (¶11) (Miss. 2002), the supreme court held that "a motion for additional time *may* be filed after the 120-day time period has expired," but suggested that filing prior to the expiration of the 120 days "would support an allegation that good cause exists for failure to serve process timely." (Emphasis added).

> Our rule states that if the 120-day period has elapsed without effecting service of process, "the action shall be dismissed . . . upon the court's own initiative with notice to such party or upon motion." M.R.C.P. 4(h). The comments state that the complaint will be dismissed "unless good cause can be shown as to why service could not be made." The rule therefore provides that *the plaintiff will have an opportunity to show good cause after the 120-day period has elapsed.* Why else does Rule 4(h) require that notice be given to the plaintiff before the court can dismiss the complaint? The requirement of notice being given contemplates a response to the notice. A motion for additional time is an appropriate response to the notice.

*Id*. at (¶10).

¶17. Thus, while we are to give the circuit court deference in its decision to deny Darville's third and subsequent extensions of time to serve process, we find the court's denial was not

9

supported by substantial evidence. Kelly, counsel for Mejia, claims that Darville's search has "not been diligent," but the record clearly shows that over a period of almost two years, Darville attempted to locate Mejia through numerous internet searches, albeit unsuccessfully. The only specific lack of diligence cited by Kelly is Darville's failure to attempt service with the Secretary of State earlier. Darville did not attempt process through the Secretary of State until February 26, 2014. Yet service would still not have been effective, as the Secretary of State also failed to locate Mejia – the notice of service was returned unclaimed, and the return receipt was not signed. In *State Farm Mutual Automobile Insurance Co. v. Stewart*, 209 So. 2d 438, 440 (Miss. 1968), the supreme court voided a default judgment against the defendant because there was no return receipt from the defendant; nor was there a "refusal of the letter by him . . . or any evidence of the actual delivery of the process to him." "It is essential to due process that a defendant have notice of an action against him." *Id*.; *see also Arcenaux v. Davidson*, 325 F. Supp. 2d 742 (S.D. Miss 2004) (denying a motion for default judgment as the defendant, who was served through the Secretary of State under the long-arm statute, had "neither signed the return receipt nor 'refused' to accept delivery of the summons and complaint"). Accordingly, there is no evidence that Darville's failure to attempt service with the Secretary of State earlier would have had any effect on this litigation.

¶18. The dissent posits that Darville never attempted service at the most current listed residence for Mejia. However, the dissent disregards the fact that even Mejia's counsel, Kelly, failed to provide any definitive information as to Mejia's whereabouts, nor make any

10

representation as to what diligence could have located Mejia. *Compare Moore v. Boyd*, 799 So. 2d 133, 137 (¶13) (Miss. 2001) (Although Moore claimed he could not locate Boyd, evidence showed Boyd's own father told Moore where Boyd could be located, but Moore failed to serve process within the prescribed time period and "made no effort to obtain such an extension in order to steadfastly preserve his future efforts at service on Boyd."). If Mejia was so easily found, as claimed by the dissent, why did Kelly not inform the trial court of this information to support its motion to dismiss? As noted by Darville, "as of this date, [Mejia] has not and [cannot] be located by [Darville], the courts, nor his own insurance carrier, UAIC."

¶19. We find that Darville provided substantial evidence that good cause existed for his failure to serve process within the prescribed period, and the circuit court abused its discretion in denying his motions for additional time.

### III. Whether the trial court erred in granting the motion to dismiss.

¶20. In granting the motion to dismiss, the circuit court observed that even had it granted another extension for time, the case could not be "revived" before the statute of limitations had run. The circuit court dismissed the action with prejudice based on its conclusion that the statute of limitations had run under Mississippi Code Annotated section 15-1-49 (Rev. 2012), which prescribes a general three-year limitations period.[4]

---

[4] Rule 4(h) clearly provides that an action "shall be dismissed *without* prejudice" if service is not effected within the prescribed 120 days and the plaintiff fails to "show good cause." (Emphasis added).

11

¶21. However, the circuit court failed to consider that the statute of limitations may be

tolled under Mississippi Code Annotated section 15-1-63 (Rev. 2012), which states:

> If, after any cause of action has accrued in this state, the person against whom
> it has accrued be absent from and reside out of the state, *the time of his*
> *absence shall not be taken as any part of the time limited for the*
> *commencement of the action*, after he shall return.

(Emphasis added). This statutory provision has been construed "to require that a plaintiff

seeking to benefit from it must have been unable to effect service on the defendant for the

period which it is claimed that the statute is tolled." *Sullivan v. Trustmark Nat'l Bank*, 653

So. 2d 930, 931 (Miss. 1995) (citing *Gulf Nat'l Bank v. King,* 362 So. 2d 1253, 1254 (Miss.

1978)). The supreme court has explained:

> That is, the defendant must have left the state and not be amenable to service
> under a long-arm statute or other means, because for example, his whereabouts
> are unknown. The period of time that the defendant's whereabouts are
> unknown is deducted from the period of the statute which would otherwise
> have run, in effect, adding that time to the statute of limitations. However, the
> statute of limitations is not tolled where the plaintiff knew or should have
> known of the defendant's whereabouts. The burden of proof that the
> defendant was absent and not amenable to service is on the plaintiff.

*Id*. at 931-32.

¶22. Unless and until Mejia is located, and the circuit court is made aware of where he has

been since the date of the accident, it will be unable to determine whether the statute of

limitations has been tolled or has expired. Due to this uncertainty as to whether the statute

of limitations has run, we find the circuit court erred in granting the defendant's motion to

dismiss *with* prejudice. Because Darville has shown good cause for her failure to serve

process, and the statute of limitations may be tolled in this instance, we reverse and remand for further proceedings.

¶23. **THE JUDGMENT OF THE HOLMES COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING, P.J., ISHEE AND JAMES, JJ., CONCUR. WILSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., CARLTON AND FAIR, JJ.**

**WILSON, J., DISSENTING:**

¶24. The Mississippi Supreme Court has emphasized that a "trial court's finding of fact on the existence of good cause for the delay in service of process has been deemed 'a *discretionary ruling* and entitled to *deferential review*' on appeal."[5] Therefore, "we . . . only examine 'whether the trial court *abused its discretion* and whether there was substantial evidence supporting the determination.'"[6] I dissent because, applying our deferential standard of review, I cannot say that the trial court abused its discretion by finding that Darville failed to establish good cause or erred by dismissing the complaint with prejudice.

¶25. The complaint in this case was filed on April 26, 2012, a little over 100 days prior to

---

[5] *Jenkins v. Oswald*, 3 So. 3d 746, 750 (¶13) (Miss. 2009) (quoting *Holmes v. Coast Transit Auth.*, 815 So. 2d 1183, 1185 (¶6) (Miss. 2002)) (alterations omitted).

[6] *Id.* (quoting *Holmes*, 851 So. 2d at 1185 (¶6)); *see also id.* at 751 (¶23) (Pierce, J., joined by Randolph, Lamar, and Kitchens, JJ., specially concurring) ("It cannot be overstated that our trial courts are entitled to 'deferential review' in matters that require a discretionary ruling."); *Stutts v. Miller*, 37 So. 3d 1, 7 (¶20) (Miss. 2010) (Pierce, J., joined by Randolph, Lamar, and Chandler, JJ., specially concurring) (same).

the expiration of the statute of limitations. Service was attempted on Mejia on May 30, 2012, but the process server reported that the address in Memphis was a "bad address." Indeed, the address on the summons appears to have been incomplete and inaccurate—it was directed to Mejia at "4316 Sunny Drive," but other records indicated that he lived or once lived at "4316 Sunnyslope Drive."

¶26. A little over two months later, on August 6, 2012, Darville obtained summonses for three new addresses, including the "Sunnyslope Drive" address. She attempted to serve Mejia by certified mail at these addresses but was unsuccessful.

¶27. On September 14, 2012—after the 120-day period for service of process had already expired—Darville moved for additional time to serve Mejia. Without any apparent support in the record, Darville asserted that there was "reason to believe" that Mejia was "attempting to evade service of process." The circuit judge never ruled on this motion.

¶28. More than three months later, on January 2, 2013, Darville filed a second motion for an extension of time. In the motion, she reported no new efforts to serve Mejia but stated that she was "subpoenaing the license/driving records of [Mejia] to attain his current whereabouts, as evidenced by [an attached exhibit]." The attached exhibits were draft subpoenas to two state agencies in Tennessee and the Mississippi Department of Revenue. The circuit judge granted Darville's motion for an additional 120 days to serve Mejia.

¶29. The docket reflects that the clerk issued subpoenas to Darville's attorney, but Darville never filed any proof of service. *See* M.R.C.P. 45(c). She did attach copies of the subpoenas

14

as exhibits to a subsequent motion. One was stamped as "received," but the other two bore no indication of service or receipt. There is no evidence in the record as to whether the subpoenas were ever served or whether any responses were received.

¶30. A docket entry in February 2013 indicates that the clerk mailed another summons to Darville's attorney. However, the record contains no proof of service or anything else to indicate the address on the summons or what became of it.

¶31. On July 2, 2013, Darville filed a third motion for additional time to serve Mejia. This motion was filed fifteen months after Darville filed her complaint and approximately two months after her 120-day extension had expired. In her motion, Darville vaguely reported that she had subpoenaed Mejia's driving and license records in an effort "to attain his current whereabouts, but to no avail." She also represented that she had "received one remaining address for [Mejia] and would like to attempt to serve [Mejia] at that location." The circuit judge promptly denied this motion, finding that Darville "failed to provide . . . the Court with sufficient evidence to find that good cause exists for the extension or that the extension was requested within the prior 120 days extension." There is nothing in the record to indicate that Darville ever attempted service at the "one remaining address" she had received.

¶32. The docket reflects no further action in the case for almost six months until December 20, 2013—twenty months after the complaint was filed—when Darville filed a fourth motion for additional time to effect service. In this motion, Darville stated that she had "performed extensive investigations as to the whereabouts of [Mejia], as evidenced by [an attached

exhibit]." The attached exhibit is a LexisNexis public records search. Darville also asserted that Mejia was "evading service" and was "believed to be an *illegal alien* and/or a *drifter*" or possibly "a *vagrant*" (emphasis by Darville). Finally, based on the LexisNexis report, Darville alleged that Mejia "uses multiple names, addresses and identification[s]" and that his "social security number is linked to multiple individuals."

¶33.    In February 2014, Darville attempted to serve Mejia through the Secretary of State pursuant to Mississippi Code Annotated section 13-3-63 (Rev. 2012) and through his insurance company. The Secretary of State's attempt to serve Mejia by certified mail was unsuccessful, but it should be noted that the summons was mailed to the same "Sunny Drive" address that appears to have been incomplete and inaccurate when service was first attempted there almost two years earlier. At this point, as the majority describes, Mejia moved to dismiss on the ground that Darville's claim was barred by the statute of limitations as a result of her failure to effect service within the time permitted by Mississippi Rule of Civil Procedure 4(h). In opposition to the motion, Darville repeated her various allegations regarding Mejia, including that he is an "illegal alien," a "vagrant," or a "drifter."

¶34.    In May 2014, after a hearing, the circuit judge granted Mejia's motion to dismiss. In her order, the judge reaffirmed her prior ruling that Darville failed to establish good cause for an extension, and she concluded that the statute of limitations had run as a result.

¶35.    As Darville's arguments rely heavily on a LexisNexis public records search, that report is worth examining. Darville says that the report shows that Mejia "has eleven (11)

16

different aliases." However, the report refers to these as "Name Variations," not "aliases," and they are all slight variations on Hector Mejia or Hector Mejia Herrera (e.g., with and without a "Sr." or with and without a middle name or initial). Darville also says that the report reveals "eighteen different residences from 2008-2013." However, some of these are obvious duplicates, and the report shows only five possible addresses for the period of time after Darville filed her complaint and attempted service. Finally, Darville highlights the following notation in the LexisNexis report: "SSN linked to multiple people." Perhaps this is supposed to support her claim that Mejia is an "illegal alien," but its meaning is at best unclear, and it may simply refer Mejia's "Name Variations." In sum, Darville's LexisNexis report, which she refers to as an "Investigative File," actually reveals little if anything that would support a finding of good cause. It certainly does not demonstrate that the circuit judge abused her discretion by finding that good cause was lacking.

¶36.    This is not to say that the report is entirely lacking in potentially useful information. For one thing, it indicates that Mejia has a valid and current Tennessee driver's license that he renewed in February 2012. He appears to have maintained a Tennessee license since at least 2002. The Tennessee Department of Safety is not supposed to issue licenses to illegal aliens. Tenn. Code Ann. § 55-50-303(9). Possibly the most relevant piece of information in the report is the address associated with Mejia's current Tennessee driver's license, which was issued just two months before Darville filed her complaint. This address is also the first—and seemingly current—address listed in the LexisNexis report and the address

17

connected to his most recent Tennessee vehicle registration.  Yet as far as I can discern from the record, *Darville never once attempted to serve Mejia at this address*, even though her own research seems to suggest that it was his most likely place of residence.  There may be a good explanation for this, but if there is, it is not in the record.[7]

¶37.    On this record, it simply cannot be said that the circuit judge abused her discretion by finding that Darville failed to meet her burden of establishing good cause.[8]  Indeed, the evidence that Darville placed before the circuit judge supports a finding that she took no steps to effect service from August 2012 until February 2014, when she attempted service through the Secretary of State at what appears to be an incomplete and incorrect address.

¶38.    As noted above, the circuit judge's ruling on this issue is "a *discretionary ruling* and entitled to *deferential review* on appeal." *Jenkins*, 3 So. 3d at 750 (¶13) (alterations omitted).  This point "cannot be overstated." *Id.* at 751 (¶23) (Pierce, J., specially concurring).  "When we say that the trial court has discretion in a matter, we imply that there is a limited right to be wrong.  The statement imports a view that there are at least two different decisions that the trial court could have made which on appeal must be affirmed." *Darnell v. Darnell*, 167

---

[7] The majority misunderstands my point.  I make no claim that "Mejia was . . . easily found." *Ante*, at (¶18).  To begin with, it was not Mejia's burden to prove that he was "easily found."  It was Darville's burden to prove that she acted diligently in trying to effect service. *See Holmes*, 815 So. 2d at 1185-87 (¶¶7, 12-14).  The absence of any record evidence that she ever attempted to serve Mejia at the address associated with his current driver's license is relevant to that issue.  We do not know whether Mejia would have been "found" there because Darville apparently never attempted service there.

[8] *See Holmes*, 815 So. 2d at 1185 (¶7) ("The plaintiff bears the burden of establishing good cause.").

So. 3d 195, 207 (¶ 34) (Miss. 2014) (quoting *Burkett v. Burkett*, 537 So. 2d 443, 446 (Miss. 1989)) (alterations omitted). For this reason, the majority's reliance on *Jenkins* is misplaced. That decision *affirmed* the trial court's finding of good cause, but it in no way implied that the Court would have *reversed* a finding that good cause was lacking. Indeed, from reading the opinions in *Jenkins*, a 5-to-4 decision, I cannot help but conclude that the Court would have affirmed *either* finding by the trial court,[9] as is often the case with a trial court's discretionary ruling. Therefore, it would be a mistake to suggest that the circuit judge in this case should be reversed simply because Darville's attempts to serve Mejia are in some ways similar to those of the plaintiff in *Jenkins*. The only question for this Court is whether there is substantial evidence in the record in this case to support the circuit judge's finding that good cause was lacking. For the reasons discussed above, there is.

¶39. The majority also concludes that any dismissal should have been without prejudice because "the statute of limitations may be tolled in this instance" pursuant to Mississippi Code Annotated section 15-1-63 (Rev. 2012). *See Sullivan v. Trustmark Nat'l Bank*, 653 So. 2d 930, 931-32 (Miss. 1995); M.R.C.P. 4(h).[10] However, Darville did not raise this issue in the circuit court in opposition to Mejia's motion to dismiss or at the hearing on the motion.

---

[9] *See Jenkins*, 3 So. 3d at 750 (¶16) (emphasizing the deferential standard of review and criticizing the dissent for only "pay[ing] lip service to the principle"); *id.* at 751 (¶¶19-24) (Pierce, J., specially concurring) (emphasizing the deferential standard of review and "yield[ing] to [the trial court's] finding").

[10] As with the issue of good cause, "[t]he burden of proof that [the statute of limitations should be tolled because] the defendant was absent [from the State] and not amenable to service is on the plaintiff." *Sullivan*, 653 So. 2d at 931-32.

*See Moffett v. State*, 49 So. 3d 1073, 1088 (¶41) (Miss. 2010) ("The well-recognized rule is that a trial court will not be put in error on appeal for a matter not presented to it for decision." (quoting *Mills v. Nichols*, 467 So. 2d 924, 931 (Miss. 1985))). Nor has she articulated it on appeal. The nature of the dismissal is not identified as an issue or specified as error. Near the conclusion of both her principal brief and her reply brief, Darville cites *Sullivan* as a "*cf.*" at the tail end of a long string-cite, with a parenthetical reference to section 15-1-63. However, the argument to which the string-cite is appended is that the statute of limitations was tolled during each 120-day period for service. This is insufficient to preserve the distinct issue that the majority addresses, *see* M.R.A.P. 28(a)(3) & (6), even if it had been raised in the circuit court, which it was not. Accordingly, I would hold that this issue is waived.

¶40.     In conclusion, on the record before us, it cannot be said that the circuit judge abused her discretion by finding that Darville failed to meet her burden of establishing good cause. Therefore, the circuit judge did not err by dismissing the complaint. Because the majority reaches a different conclusion, I respectfully dissent.

**GRIFFIS, P.J., CARLTON AND FAIR, JJ., JOIN THIS OPINION.**